Let's hear our third argument this morning, 17-1454, Romero v. Helmerich & Payne. Mr. Kilroy. May it please the court, counsel, my name is James Kilroy and I represent Helmerich & Payne. I'm going to be referring to Helmerich & Payne as H&P through this argument. As you know, there's both an appeal and a cross-appeal argument. I'm just, in this time, talking about the appellate issue and in my reserve time, to the extent I have it, addressed a cross-appeal argument. This is a wrongful termination violation of public policy case. It's a common fact pattern that you and many courts have seen where a plaintiff brings claim for workers' compensation benefits, is terminated and claims that the termination is in violation of his right to have workers' compensation benefits. Simple case thus far. From our standpoint, the plaintiff complicated the case by alleging, in addition to a termination, a constructive discharge claim. During trial, the plaintiff, Mr. Romero, admitted that he did not resign. He admitted that he did not resign because his work had become so intolerable that he had no choice but to resign. We filed it there. We brought a motion for judgment. The jury agreed with that, right, and found that he had been actually discharged. If that's the case, really, is there any prejudice or harm because of the erroneous instruction? There is. I mean, the bottom line is he was forced to quit or he was fired, and he was, you know, either way you get there, the jury was clearly citing with the plaintiff in this case. And if we just stop it that he was actually discharged, you know, what prejudice flows to H&P? And I'll answer that question directly, and then I hope to get back to sort of the premise. The problem here is, as you point out, the jury found that he both was constructively discharged and that he was terminated. Those are completely mutually exclusive concepts. I think the question I'm answering from you is, well, so what? If the jury found that he was terminated, who cares if they added a advisory opinion, whatever you want to call it. We can cut that out. And here's the problem, Your Honor. Here's the problem with looking at it that way. And it really goes to a series from our standpoint of errors. We would acknowledge our position is that the judge never should have let the constructive discharge claim go to the jury in the first place. That's our first argument. Now, had the jury come back and found no constructive discharge, but there was a proper termination, even though I might be right, that the judge let a claim go that shouldn't have gone there, there's no prejudice there. The prejudice is different in our case because the jury found both in favor of a claim that never should have been there, the constructive discharge claim, and a claim that should have been there, the termination claim. Those are inherently incompatible. Did you object to those jury instructions in the alternative? We objected from the beginning. We objected. Did you say we object to the two jury instructions being incompatible? Being incompatible. Because they talk about two different kinds of constructive discharge. Well, let me break it up and break it down and make sure I'm answering the question. We first objected to any instruction whatsoever related to constructive discharge based on the plaintiff's admission. But after the court read the jury instructions and then brought you up and said now you have objections to the jury instructions, did you at that point, after they had been read to the jury, say we object to either instruction four or five or both? After the judge read to the jury, I do not recall. I don't believe so. All right. I don't believe so. Back to why we think that there's clear prejudice. We're in this unusual situation and we've got a verdict that is incompatible because common sense tells us you can't have both a constructive termination and you can't quit and be fired. You can't have a termination and a constructive termination. Well, the Colorado law is not entirely clear on that. I thought it was an odd jury instruction on you could believe you had been discharged and that was one of the elements for constructive discharge. Why wouldn't that reconcile the two special verdict responses? The instruction number 14 that had the two parts to it, this was a mishmash of basically, if I remember correctly, number nine and number 10. Number nine is the traditional constructive discharge where you're instructing the jury that a constructive discharge happens if the employee has to quit because of intolerable working conditions. The use of 3110 goes to this notion of the plaintiff believing he's been terminated in so many words. We absolutely objected to that anything related to 3110. The notes of use of 3110 say this is only used when there is a resignation that the preface of 3110 refers to that same notion. I guess I'm at the same point that maybe possibly for a slightly different reason than Judge Timkovich. But as the I think it was Don Quixote who said it in Man of La Mancha, whether the rock hits the pitcher or the pitcher hits the rock, it's not good news for the pitcher. Right. So whether he was fired or whether he was whether he quit because conditions were intolerable in either case, you've got two jury verdicts against you, one on the you fired him and one on the he quit because you forced him to quit. The consequence to him is the same. He's out of a job. What am I missing in this what you call this irreconcilable conflict that forces us to set the verdict aside? I think that's how the district court viewed it as well. And what I think is missing is the district court made an assumption that this court may be making, which is that these are two alternative and viable facts of this case claims. Our position is that the constructive discharge claim should not have been there. OK, but it has. But let's say let's say you were right that it shouldn't have been in there. But you're not arguing that the other one shouldn't have been in. He was fired and you they they ruled against you. Well, the jury found against you on that. You were fired. Correct. So the consequences like the pitcher example, I mean, the consequence to you is the same. Your claim, the consequences. We have a situation where jury finds both termination, which they could have found and constructive discharge, which we say they never should have been in a position of finding. Under the fact that it's logically inconsistent. Those findings nullify each other and kill each other. And we have no more reason to believe that the jury in light of and cancel each other or does one become irrelevant? I think they canceled each other in the Johnson v. Alp case. Well, I'm not sure that they're mutually inconsistent because the way the Colorado Supreme Court has interpreted constructive discharge. It includes quitting because you think you've been fired. So if we take that construction for constructive discharge in question three, the jury said he was actually discharged in question four. He said he quit because he thought he had been fired. My problem is he insisted that he didn't quit. He insisted that I did not. So maybe you think the evidence doesn't support the verdict under four, but that doesn't dispute the evidence being sufficient under three. And he wins either way. And again, I get back to this notion. And let me illustrate it with the comment that our district court made in trying to reconcile what I think everybody at first blush or thought looked pretty inconsistent. How can you have a I was fired and I quit, which is really what we had. In the judge's ruling denying our motion for a new trial, the judge noted that clearly there's confusion. And her take on sort of how to reconcile is perhaps the jury, different jurors, had a different notion of which legal theory was invoked. They agreed that the termination of employment was involuntary, but there may have been disagreement about this issue of termination versus constructive discharge. We agree that may have been exactly what happened. And that's exactly why we think this has to be retried without the claim that never should have been in there in the first place. The constructive discharge claim, the one that there's no there's no evidence in support of. Following up on Judge Ebel's question, if the jury might have come back and found that he they disbelieved his testimony, that he was for the they found that he was not actually discharged. And so then they moved to number four. And under Colorado law, it can be a constructive discharge if he thought he had been discharged and I guess was incorrect about that. That would create an intolerable working environment. And so it seems to me that I think where Judge Ebel's question was, that seems to reconcile the state of the record that the that the court was being asked to or the jury was being asked to interpret. And I think my colleague will raise that exact point. My response to that is that assumes that this notion of constructive discharge that you just described and which is really the gist of this 31 colon 10 is the law of constructive discharge standing alone. And that's not what the case law says. It's not one that's going to satisfy constructive discharge because in the Boulder Valley case, they say you also have to show that your working conditions were so intolerable that you had to resign. The problem with. Yeah. If I think I'm no longer an employee, that's an intolerable outcome. The problem with that standard, which hasn't been accepted as a standard of constructive discharges, it lowers the bar so much. It really lowers the 31 10 is inconsistent with Colorado law. Then I think that the jury instruction committee made a mistake. No, I think it's consistent when you do what it says you should do and combine it with 31 nine, which requires a showing that your working conditions are intolerable. And that's that's what we're missing. I do want to reserve my time for the cross. Thank you, counsel. Mr. May it please the court. Counsel. My name is Andrew Petrosky. I represent plaintiff's side. Romero in this matter. I'd like to start by following up on some of the questions regarding the harm. Although that's not necessarily where the court needs to start in resolving a peace appeal. It certainly is an area where the court can't resolve it. And he said he did not object to these two jury instructions after they were given to the jury and before the jury deliberations. Did you argue that that constituted a waiver of any complaint to those two jury instructions? Did we argue that before the trial court? Is that your question? We did not, Your Honor. However, the court can still consider that the court can affirm on any ground that supported by the record. Do you do you hear argue to us that that is a waiver if you don't object after the jury instructions are read or are you not making that argument? I don't have the case law in front of me. And specifically, that would give me that contour to say I can affirmatively tell you that if you don't make that argument after the jury is instructed, that that does constitute a waiver. That may be what the case law says. I don't know that that is the case law. If the case law says that, then you would like to argue it. I would, Your Honor. Don't lose my case, Judge. So with regard to harm, what this court can do if it so chooses, it can really adopt the principle that was talked about in the Hall case. Now, Hall is certainly not binding on this court, but the logic is very persuasive. And, indeed, the court could, if it wanted to, cut and paste much of the language from Hall's reasoning. In Hall, what the court said is, look, here is a situation where the jury has found on two alternative theories of liability, either of which result in the verdict for the party that won in the case. And as a result of the jury finding on either alternative liability theory, there's no double recovery. So there's no prejudice that's done to the defendant when you can't show that there was a double recovery or that there was any other issue with regard to the jury finding those inconsistent verdicts. You did not hear my colleague argue here before you or in the briefs that there was any confusion by the jury specifically with regard to actual termination as a result of the jury being instructed on constructive discharge. So your client was pretty emphatic that he'd been discharged. And it seems the Colorado law is pretty clear. You need resignation plus intolerable conditions for constructive discharge. Those are two different paths. So I think there's a couple of points there, Your Honor. Our client was of the belief that he left the 302 meeting and had been terminated based on the words and actions of H&P. And under 3110, the instruction says, even if there is a resignation, if the employee reasonably believes, based on the words and actions of the employer, that he had been terminated or was going to be terminated. So for an employee... Is that plausible under this record? I think it is, Your Honor, because what H&P argued is that, look, he left that meeting and we didn't fire him. That was their argument, is that he quit at that meeting. You know, H&P, during closing arguments, said, look, this is a messy situation. And if you compare this case to, say, the Colorado Civil Rights Commission case or the Boulder Valley case, it is different in that specific factual regard. This situation, it was unclear whether he was formally terminated or informally terminated. May I ask a question, please? Sure. Did you plead the constructive discharge and the firing, the termination, in the alternative? We pled them as alternative theories. They were pled in the alternative. That's right. Now, the way the jury was instructed, which the court did follow, the trial court did follow the jury instructions, and this is perhaps where the jury was able to find both. And, again, we just need to find a plausible explanation for what the jury did. It doesn't have to be the best explanation. It just has to be one that's plausible. The second paragraph of Instruction 14 says, even if there was a resignation, and then it goes on to talk about that language that we've discussed previously. So what the jury could have said is, okay, looking at, we think going into that meeting that H&P did have intent to discharge him, and, in fact, they discharged him. Now let's look at the constructive discharge instruction, and it says, even if he resigned, even if he resigned, depending on what his reasonable belief was, that can be a constructive discharge. So the jury could say, okay, even if his reasonable belief was that he was fired, but H&P didn't have that intent, he can still be wrongfully discharged from his employment. I would like to talk, Your Honors, about a way the Court can resolve this issue without talking about prejudice or without looking at inconsistency, and that is nullity. We know from, again, non-binding opinions, Floyd and Frey, which are the two principal ones relied on by Mr. Romero in his brief, that if you have a jury who has explicit instructions from the trial court on the verdict form as to how to answer that form, verdict form, and they do not follow those jury instructions, but their answer to one of the questions resolves the issue before it, then those remaining answers in contradiction to the verdict form instructions are nullity. So that's exactly what happened here. Give me the case side on that one again. Yes, Your Honor. So there is the Floyd case, which is a Ninth Circuit case, and then there's the Frey decision, which is from the Eastern District of Wisconsin. Again, neither of those are binding in this court, of course. But the logic is rational. Here, the jury determined actual termination. That resolved the issue of H&P's liability. So then when they disregarded the instruction to proceed to question 5 and instead went to question 4 and answered question 4, it became a nullity. It's a finding on liability that they had already resolved. And now conveniently, and works well for harmlessness, is that they also found yes for Mr. Romero on constructive discharge. Unless there's further questions on H&P's appeal, Your Honors, I would like to turn to Mr. Romero's cross appeal to discuss the interest. And really, there's a single straightforward issue that's presented by Mr. Romero's appeal. And that is the David case? That's the David case, correct, Your Honor. So the straightforward issue is, was Mr. Romero's tort claim against H&P brought to recover damages for personal injuries? And that is the critical language of Colorado revised statute 1321-101. As recognized by Judge Gorsuch in David, what you do is you say, okay, is this a tort claim that is brought for damages to property or damages to personal injury? And what Judge Gorsuch in David noted is that under Colorado law, the starting point is, is this damage to property? And if it's not a claim damage to property, by definition, it's claim damage to personal injury. So the analysis should flow as, is this a claim damage to a property interest? If not, by default, then it goes to personal injury. But you're asking for restoration of lost wages, effectively, right? In David, the injury flowed from defamation or reputational harm. And since I was on that panel, I can see how we reached that outcome. But this seems a little bit different because you're asking for the restoration of wages that the employer effectively wrongfully withheld. And, you know, the wrongful withholding statute is the broader, more comprehensive of the two. And it seems like those lost wages are more naturally a lost property right analytically than something that would be what I think of customarily as a personal injury. Can you help me sort that out? I can, Your Honor. Mr. Romero doesn't have a property right in those lost wages because he's an at-will employee. Under Colorado law, at-will employment doesn't create a property interest. So H&P could have terminated Mr. Romero one minute after the 302 meeting on December 27th for any legitimate reason, and it violated his property. I'll let you finish. But if he hadn't been, if there hadn't been a termination or whatever, and, you know, the employer paid him 50% of what the contract was for wages, and so he sued to get the other half back, would that be a property right? Where he has a contractual right to those damages. Right. Yeah, that is the distinction, I believe, Your Honor. Why is that this case? Because he does not have a contractual right to any future earnings with H&P. Under a contract for employment, depending on the terms of the contract, he had, they have to pay him the wages no matter, you know, maybe it's good cost standard, maybe But he's an at-will employee, but there's an exception to at-will, which is this violation of public policy. And so, you know, he should have been, he should have continued to receive his income, just like he should have received 100% of his income in my hypothetical. You know, how does that, why does that morph it over into personal injury damages? So I think that what you have to go back to is does the person have a property right in the damages that they're claiming? And Mr. Romero, as an at-will employee, I don't think the exception that you're referring to, Your Honor, which is discussed in the Martin Marietta case, creates a contractual right to employment. It does talk about an exception to how you can end at-will employment, but it doesn't create a property interest in future earnings for the employee. As I said, you know, Mr. Romero could have been terminated a minute later or a day later and would have no claim as long as that termination, no claim for damages as long as that termination had been done in compliance with the law. How did the jury calculate the damages here? So the jury calculated the damages based on how Mr. Romero presented them at trial, which was primarily through his testimony and the testimony of his economic expert about what his earnings were at H&P, which is simply the best evidence as to what Mr. Romero's earnings are. Now, theoretically, he could have presented the damages in a different way. He could have said, well, look, you know, really what has happened here is my earnings potential has been impaired and my potential capacity to earn money. And that would make it look more like David, right? It would make it look more like David. And that's the problem with what the court, what the trial court did is the trial court created this new framework where he said, hey, we're not going to determine whether the tort was committed as to property or as to a personal injury right based solely on what were the nature of the damages that were claimed, and that's what David says you're supposed to do under the statute. Rather, what the trial court did is say, well, let's look at how Mr. Romero presented those damages at trial. Counsel, if the claim had been presented as a wage claim, wouldn't there, under Colorado law, aren't you entitled to, like, double recovery for denial of wages? And as I recall, aren't there other statutory benefits, attorney fees, and other things that flow for wage claim cases? Are you referring to wage claim through workers' compensation or wage claim through, like, FLSA? FLSA type. I'm not sure of the answer to that question, Your Honor. That's one question, so if the answer is we don't know, we don't know. Sure. And the other question I have is, is there a distinction to be made between liquidated and unliquidated damages in this context? I don't think so, Your Honor, because what Colorado law says is, look, you don't look at the back-end nature of the damages, so you don't distinguish. I thought that in order to have property, it had to be liquidated at the offset and not something that was unliquidated. I'm just kind of, these are vague cases in the back of my mind. Sure. I don't have those cases in front of me or know them off the top of my head, Your Honor. Thank you. Those are the only two questions. Okay. Okay. What's the financial difference, the monetary difference between the two different interest theories? Right now, Mr. Romero's pre-judgment interest award is a little over $100,000, Your Honor. Are you asking for his specific amount difference? Yeah, under the personal injury, what would that be? Sure. If it is remanded with directions to award him pre-judgment interest solely under the $160,000 to $180,000. But that's not the determination as to whether the personal injury judgment statute should apply or not. Again, like David recognized, it's the nature of the damages. And as David noted, the courts in Colorado don't distinguish between the different types of compensatory damages. You look at the nature of the damages claimed. Do those flow from a recognized property right that the person has in those damages? If not, then by definition, it's personal. It fits within Colorado's relatively broad personal injury pre-judgment interest statute. Thank you. Great. Thank you, counsel. Just briefly, and maybe in reverse order, I think that the question was, what would the difference be if it's remanded back the way Mr. Romero wants? And on page 66 of the response brief, they say that's a swing of $286,000, as I understand it. It's a big difference. Going back maybe to the first argument on appeal, I heard an argument that, and it's in the brief, they call it the surplusuage or superfluous argument. And basically, it's what we heard, that if you have a verdict form and jury says yes to number three, number four is inconsistent, you tear up number four. First of all, if we adopt that, the Tenth Circuit doctrine, which has never been adopted before, it's completely random, what if the order had been different? What if we had had the constructive discharge claim before the termination claim? Would you be arguing something different? It's not supported by Tenth Circuit law. To the contrary, the notion is you should feel free to tear up the jury's finding as to one of the two claims that it found in the Lock Branch case that we cited on page 16 of our reply brief as direct rebuttals to that notion. On this issue, Judge Tinkovich stole my fire by focusing on the nature of the employment relationship. And I think you take a step back, and the way to reconcile our case with David, in my view, is pretty easy. Towards the end of David, there's an acknowledgment that this decision doesn't disrupt Colorado law, and there's a cite to the Schusser case, I think, which was a workers' – it was a bad faith breach of contract claim. And I'm paraphrasing. Towards the end, they say, of course, that dealt with a wrongful withholding, we should and did apply the wrongful withholding statute because he had – the plaintiff had a right to those benefits or those dollars. That's the exact same thing we have here. If anything, it's even more so in our case. The employment relationship, remember, fundamentally is a contractual arrangement. It's one that has terminable at will provisions in some cases like this one. But at the end of the day, if you work, you're entitled to wages. If an employer doesn't pay wages, yes, you can go to court and get statutory penalties. You have an entitlement to be paid your wages. That's something that you expect. We have a case – I push back on this notion that because it's employment, it will – On that point, and that's my point, it just seems to me that it's difficult conceptually to – for me to kind of make a distinction here on David to say, well, it's a property claim and wages. Typically, you think of property claims as liquidated damage claims or if they're against property, then a way of – that you assert them as damages rather than as the kind of judgment interest – of judgment you have in this case. So how do you – how do you – The way I look at it, just on a high level, the way I look at it is in the employment at will situation, it's true. You can be terminated for any reason. You don't have an expectancy to be paid after you're terminated. But we're talking about a specific tort in this case, very different than the negligent misrepresentation case in David. We're talking about a tort that's an exception to the employment at will rule, which basically says you don't have the unilateral right to terminate Mr. Romero if you're doing so for a reason that violates public policy. So with that scenario, the wages that he is claimed – not that he is claiming, but he claimed and hired an expert to put up are wage claims. These are the dollars I would have gotten had you not unfairly fired me. It's property, and we think it's easy to keep David in place and make this distinction why this is a clear withholding interest in that case. Okay, counsel, I think your time has expired. Mr. Petrosi, you can have a minute and rebuttal because of the procedural posture of the argument if you'd like. Ben, one minute. Thank you, Your Honor. So two points. The Schuessler case involves plaintiff's claimed injury in that case was pinnacle, owes me money that they owed me and wrongfully did not pay, that they were bound by the law to pay. I had a property right in that money. Mr. Romero's claim is much more akin to, you know, someone who, like the plaintiff and David, you denied me this opportunity to earn this money and have a property interest in that money. I was denied the opportunity to earn that money. To your question, Judge Lucero, you know, Mr. Romero had worked that time and then not been paid. That would maybe be in the nature of a property claim. But H&P, through their tort, denied him the opportunity to even create a property interest in the money by not allowing him to work, firing him for a wrongful reason. I would also like to point out that the case mentioned by my colleague with regard to the issue of finding that a prior, just, you know, that you look at the verdict and you strike out the answers as opposed to going one in front of the other, finding a nullity if the court has answered the question. That's not really what the Tenth Circuit did in that case, if you look at it. Thank you, counsel. Counselor, excuse me. The case shall be submitted. It is 1043. The court's going to take a break for the next case. We're going to take a 12-minute break. I'm going to hold to that very strictly. And we have two very interesting and important cases to follow. So, court adjourned.